No. 20.—JAMES N. BETHUNE, plaintiff in error, *vs.* JOHN T. Mc-CRARY, defendant.

[1.] Where the value of depreciated bills, at a particular time, is to be proven, the proof should apply, with reasonable certainty, to that time, and sayings of persons, as to the value of the bills, cannot be admitted to prove their value.

[2.] It is error to instruct the Jury as to the law arising from facts which are not proven, and about which there is no evidence.

[3.] The purchaser of a note after due, from an indorser who has paid it, cannot recover upon the note out of a prior indorser, any more than his vendor paid upon it.

Assumpsit, &c. in Sumter Superior Court. Tried before Judge WARREN, November Term, 1849.

Suit was commenced by Bethune against McCrary, as indorser on a note for $2000, made by John W. Cowart, and payable to the order of M. H. Brown, and indorsed by Brown, John McCrary and Isaac McCrary.

The defendant on the trial proved, that Cowart and Shotwell & Tift, in 1838, bought a steamboat for $12,000. Cowart gave his notes for $6000, and Shotwell & Tift gave their notes for $6000—and all mutually indorsed each others' notes. Subsequently, the Phœnix Bank of Columbus, as the holder of the note now sued on, brought suit against Tift as indorser, who paid off the same in bills of the Phœnix Bank, which were then valued at from 20 to 25 cents in the dollar. Tift then erased the indorsement of Shotwell & Tift, and sold the note to Bethune, without recourse.

Defendant then proved by John S. Haines, that *about the time* Tift paid off this note, he sent some bills on the Phœnix Bank to an agent in Columbus, who returned them to him as worthless. Also, by Geo. M. Dudley, that in 1844, he showed some of the bills to Robert Poe, who said they were worthless; and, farther, that the bills were valueless in Americus, (the County site of Sumter County.) To this testimony plaintiff objected, as irrelevant and in part hearsay. The objection being overruled, plaintiff excepted.

The Court charged the Jury, that if they believed that Shotwell & Tift received the consideration of the note with Cowart, and indorsed it without a special understanding that they were indorsers merely, they were to be considered as joint makers, and on payment by them, the note was discharged, and there could be no recovery of the prior indorsers. To this charge plaintiff excepted.

The Court farther charged, that Tift and his assignee could recover no more of the prior indorsers than the amount he paid, whether it be in current or uncurrent funds.

To this charge plaintiff excepted, and upon these several exceptions error was assigned.

E. R. Brown, for plaintiff in error, cited—

*Stubbs vs. Goodall,* 4 *Ga. Rep.* 106. *Collins vs. Everett, Ib.* 266. *Winn, Shannon & Co. vs. Cox,* 5 *Ga. Rep.* 373. *Byles on Bills,* 97. *Chitty on Bills,* 147. *Kirksey vs. Bates,* 1 *Ala.* 311.

B. Hill, for defendant, cited—

*Story on Bills,* §§422, 432. 2 *Greenlf. Ev.* 145. *Bank of St. Marys vs. Mumford & Tyson,* 6 *Ga. Rep.* 45.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] We are satisfied that the Court erred in admitting the evidence of Mr. Dudley and Mr. Haines. The fact to be proven was, the value of the bills of the Phœnix Bank, at the time that the plaintiff's vendor, Tift, paid the note, as indorser. Mr. Haines was permitted to testify to statements made by an agent, whom he had sent to Columbus with bills of that bank, as to their value there. This agent was a competent witness and might have been produced. Haines' proof of his statements was hearsay evidence. The same may be said of Mr. Dudley's evidence. He was permitted to testify as to the statements of Mr. Poe, about the value of these bills in Augusta. That evidence was hearsay. Mr. Poe was a competent witness and ought to have been produced. There is nothing in this case which takes the testimony of these two witnesses out of the general rule, that hearsay is not evidence. It does not fall within any of the exceptions to that rule. The value of bills, at a particular time, is a fact susceptible of proof, as any other fact. It may be shown by proving that they were not, at the time, redeemable at the bank which issued them; that they were not receivable at all in payment; or, if at all, at a discount, and what discount; or by proof of their actual sale to brokers or others in the community; and it was incumbent on the party to produce witnesses who, of their own knowledge, could swear to these facts, or others of like character.

Bethune *vs.* McCrary.

Besides, so far as these witnesses prove, of their own knowledge, the value of these bills, they are not sufficiently explicit as to the time.   The thing to be proven was, the value of the bills at *a particular time*, to wit : the time when Tift paid off the note. Now, considering the fluctuations in the value of bank paper—which to-day may pass current *at par*, and to-morrow may be at a heavy discount—we hold it proper, that the proof should be confined, with reasonable certainty, *to the time* at which their value, by the exigencies of the cause, is to be ascertained.

[2.] The Court charged the Jury, " that if they believed that Shotwell & Tift received the consideration of the note sued on, with Cowart, (the maker,) and indorsed it without a special understanding that they were indorsers merely, they were to be considered as joint makers, and on payment by them, the note was discharged, and there could be no recovery on the prior indorsers."   This charge is excepted to as hypothetical, there being no evidence whatever, that Shotwell & Tift were interested in the consideration.   Upon looking carefully into the record, we find no evidence whatever of that fact.   The evidence is, that Cowart (the maker of the note sued on) and the firm of Shotwell & Tift bought a steamboat, in 1838, for the sum of $12,000. Cowart gave his notes (and this is one of them) for $6000, and Shotwell & Tift gave theirs for $6000, and Cowart and Shotwell & Tift became mutual indorsers.   This is all the evidence in the record, to this point.   I do not see how it can be made to prove, that Shotwell & Tift were interested in the consideration of Cowart's notes.   It can only show *that*, by showing that Cowart and Shotwell & Tift were purchasers together of the entire boat.   A contrary inference, it seems to us, is the only legitimate inference to be drawn from the evidence—that is, that these parties, Cowart and Shotwell & Tift, were each purchasers of a moiety of interest in the boat, which they held severally, and for which they gave their several notes.   Indorsing for each other, in this instance, does not any more prove them respectively interested in the consideration of the notes indorsed, than would indorsement prove that fact in any instance of mutual indorsement.   The legal inference drawn from the fact of indorsment is, that the parties were accommodation indorsers for each other.   Believing that there is no evidence upon which such instructions could be predicated, we think the charge was not required by the case—was

calculated to direct the mind of the Jury to an issue not made, and, therefore, erroneous. Upon these two grounds the cause is remanded.

[3.] Shotwell & Tift, who were the last indorsers on this note, being sued, paid it to the Phœnix Bank in their own bills, which were at a discount, and sold it to the plaintiff, erasing their names. The plaintiff brought suit. on the note against the defendant, a prior indorser. The Court instructed the Jury, that the plaintiff could recover only what Tift paid upon it, and this instruction is excepted to. The plaintiff is the purchaser of this note, after its maturity, and indeed, as we infer from the testimony, with actual notice of the amount which his vendor had paid on it. Under these circumstances, he can recover no more out of a prior indorser, than Tift himself could recover. He took the note, subject to all the equities subsisting upon the note transaction between the original parties—he took it, subject to the equities subsisting between his vendor and the prior indorsers to him. *He* could not recover out of them any more than he had paid, neither can his assignee. *Story on Bills*, §187. 2 *Greenlf. Ev.* §§177, '79. *Chitty on Contracts*, 773. *Chitty on Bills*, 76 *to* 79, 9*th ed. Bailey on Bills*, 2*d edit.* 534, *notes. Smith's Com. Law*, 222. 3 *M. & S.* 95. 4 *Bing.* 390. 3 *B. & Ad.* 316. *Chitty on Bills*, 536.

Let the judgment be reversed.